```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

CLEAR CHANNEL OUTDOOR, INC.,    :

     Plaintiff,                 :

v.                              :
                                    Civil Action No. GLR-13-2379
MAYOR AND CITY COUNCIL OF       :
BALTIMORE,
                                :
     Defendant.
                                :
```

**MEMORANDUM OPINION**

This constitutional challenge arises from a municipal charge Defendant Mayor and City Council of Baltimore (the "City") imposes on outdoor advertising displays. Plaintiff Clear Channel Outdoor, Inc. ("Clear Channel"), an outdoor media company, alleges the ordinance imposing the charge impermissibly regulates commercial speech in violation of the First and Fourteenth Amendments to the United States Constitution. Currently pending before the Court is the City's Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 15). Also pending is Clear Channel's Motion for Leave to File Surreply to the City's Motion to Dismiss. (ECF No. 18).

Principally at issue is (1) whether the charge constitutes a tax under the Tax Injunction Act (the "TIA"), 28 U.S.C. § 1341

(2012), and (2) whether charging outdoor advertising displays directly advances the government's interests in traffic safety and aesthetics as required by the First Amendment. The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011).

For the reasons outlined more fully below, the Court will deny both Motions on the grounds that, at least at this stage of the litigation, the ordinance is a fee, not a tax, for the purposes of the TIA. Next, regarding the First Amendment issue, there is a question as to whether charging displays directly advances the government's interests in traffic safety and aesthetics. Finally, the City raises no novel issue in its pleadings demanding a surreply.

## I.  BACKGROUND[1]

On June 17, 2013, the City Council of Baltimore passed Ordinance 13-139 levying select outdoor advertising displays in the City. Balt., Md., Ordinance 13-139 (Jun. 17, 2013) (codified as amended at Balt., Md., Code art. 28 §§ 29 et seq. (2014)). The Mayor of Baltimore signed the ordinance into law on June 20, 2013, and it went into effect thirty days later. Id. § 29-14. The ordinance recitals explain that "[t]he

---

[1] Unless otherwise noted, the following facts are stated as alleged in the Complaint. (ECF No. 1).

2

unregulated display of outdoor advertising" is a public nuisance that "harm[s] the health, safety, convenience, and welfare of" City residents.  Id. at 1:21-23.  They declare that "outdoor advertising endangers public safety by distracting the attention of drivers from the roadway," and "harm[s] the City by creating visible clutter and blight . . . in a way that reduces the City's ability to collect revenue from other sources."  Id. at 2:1-6.  By enacting the ordinance and imposing the charge, the City hoped to "properly allocat[e] the potential economic burdens caused by the outdoor advertising while reducing these harms."  Id. at 2:7-9.

With that purpose, Ordinance 13-139 imposes a $15-per-square-foot charge on electronic displays that change images more than once a day.  Id. § 29-3(A)(1).  For all other displays, the ordinance imposes a $5-per-square-foot charge. Id. § 29-3(A)(2).  "Outdoor advertising displays" include:

> [A]n outdoor display of a 10 square foot or larger image or message that directs attention to a business, commodity, service, event, or other activity that is:
>
> > (i) sold, offered, or conducted somewhere other than on the premises on which the display is made; and
>
> > (ii) sold, offered, or conducted on the premises only incidentally if at all.

Id. § 29-1(D).

3

The "advertising host," whom the ordinance defines as the person who owns or operates the display and charges a fee for its use, is responsible for paying the $15- and $5-charges. Id. §§ 29-1(B), 29-5. Payments are due annually when the advertising host files a report detailing the number of displays he operates. Id. § 29-5(B).

But the charge is not universal. Because government entities are excluded from the definition of a "person," they are not considered "advertising hosts," and thus their outdoor advertising displays are not charged. Id. § 29-1(E)(2). Nor does the ordinance charge so-called "onsite" displays – displays that promote a business, commodity, service, event, or other activity conducted on the premises upon which the display appears. See id. § 29-1(D).

Though the recitals insist outdoor advertising is "a separate and distinct type of activity," id. at 1:18, Ordinance 13-139 supplements a series of existing City zoning laws that regulate advertising signs. The zoning laws prohibit general advertising signs altogether in non-commercial areas, and in certain business and industrial areas. Balt., Md., Zoning Code §§ 11-2A06, 11-306, 11-406 (2014). Where general advertising

4

signs are permitted, they are subject to numerous restrictions.[2] They may not, for example, have "any flashing, blinking, fluctuating, or otherwise animated light," be placed on a roof, or "extend above the roof line of a building to which [they are] attached." Id. §§ 11-405(a), 11-407, 11-408. The zoning laws also make clear that no sign may constitute a traffic hazard, and that the City may relocate or remove any sign it deems to be one. Id. § 11-205. Lastly, the City has prohibited the construction of new general advertising signs for more than the last decade. Id. § 11-206.

This is the context within which Clear Channel brings suit. Clear Channel owns and operates several hundred outdoor advertising displays in the City, some of which are electronic with images that change more than once a day. Others are non-electronic. All of them, however, are "offsite" displays: They

---

[2] The Baltimore Zoning Code defines "general advertising sign" as:

> (1) [A]ny billboard, posterboard, or other sign that directs attention to a business, commodity, service, event, or other activity that is:
>
>> (i) sold, offered, or conducted somewhere other than on the premises on which the sign is located or to which it is affixed; and
>>
>> (ii) sold, offered, or conducted on the premises only incidentally if at all.

Id. § 11-101(e).

5

promote businesses, commodities, services, events, and other activities that do not occur on the premises where the display appears.  Moreover, Clear Channel's displays often carry a variety of messages.

Under Ordinance 13-139, Clear Channel, which owns and operates approximately ninety-five percent of the City's non-governmental outdoor advertising displays, alleges it will owe $1.5 million annually for its displays.  Clear Channel also alleges it is one of four non-governmental entities that own or control outdoor advertising displays in the City, and that it alone will be responsible for ninety percent of the assessments collected under the ordinance.

On August 14, 2013, Clear Channel sued the City in this Court under 42 U.S.C. § 1983 alleging Ordinance 13-139 violates the First Amendment, applicable to the City through the Fourteenth Amendment.  (ECF No. 1).  Clear Channel seeks a declaratory judgment that Ordinance 13-139 is unconstitutional and an order enjoining the City from enforcing it.  The City moved to dismiss the action on September 19, 2013.  (ECF No. 15).  After both parties fully briefed the City's Motion to Dismiss, Clear Channel requested leave to file a surreply.  (ECF No. 18).  The Court will address both motions below.

6

## II.   DISCUSSION

**A.   <u>Standards of Review</u>**

   **1.   Lack of Subject Matter Jurisdiction Under 12(b)(1)**

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction questions "whether the court has the competence or authority to hear the case." <u>Davis v. Thompson</u>, 367 F.Supp.2d 792, 799 (D.Md. 2005). When raised, the plaintiff bears the burden of proving subject matter jurisdiction exists by preponderance of evidence. <u>See</u> <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999).

Here, the City invokes a facial challenge, asserting that the allegations pled in the complaint are insufficient to establish subject matter jurisdiction. <u>See</u> <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." <u>Id.</u>

   **2.   Failure to State A Claim Under 12(b)(6)**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads

7

factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted). And in doing so, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**B.   Analysis**

    **1.   Subject Matter Jurisdiction Under the TIA**

The Court's jurisdiction hangs on whether, for the purposes of the TIA, Ordinance 13-139 imposes a tax or a fee. The TIA prohibits federal district courts from interfering with the

8

collection of state taxes where a speedy and efficient remedy exists in state court. 28 U.S.C. § 1341. Determining whether the ordinance imposes a tax or a fee requires the Court to "ask whether the charge is levied primarily for revenue raising purposes, making it a tax, or whether it is assessed primarily for regulatory or punitive purposes, making it a fee." GenOn Mid-Atl., LLC v. Montgomery Cnty., Md., 650 F.3d 1021, 1023 (4th Cir. 2011) (quoting Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000)) (internal quotation marks omitted).

In making this determination, the Court considers three factors: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." Id. (quoting Valero Terrestrial Corp., 205 F.3d at 134) (internal quotation marks omitted). If it remains unclear whether the charge is a tax or a fee after analyzing those three factors, the Court then considers the purpose behind the statute that imposes the charge.[3] Valero Terrestrial Corp., 205 F.3d at 134.

---

[3] Of little importance in this inquiry is the terminology Ordinance 13-139 uses. Though the ordinance repeatedly refers to the charge as a "tax," the Court does not focus on that "artificial nomenclature" in determining whether it is one. GenOn Mid-Atl., LLC, 650 F.3d at 1023.

9

Here, after considering the first three factors, the analysis is inconclusive as to whether the charge is a tax or a fee. The purpose behind enacting the ordinance, however, indicates the charge is a fee.

On the one hand, the first factor suggests the charge is a tax. A charge imposed by a legislature is more likely to be a tax than one imposed by an administrative agency. Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996) (citing San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R., 967 F.2d 683, 685 (1st Cir. 1992)). And if the responsibility for collecting the charge lies with the general tax assessor, the charge is more likely to be a tax. Collins Holding Corp. v. Jasper Cnty., S.C., 123 F.3d 797, 800 (4th Cir. 1997). The attendant charge is not imposed by an administrative or regulatory agency, but by the City Council. Also, the ordinance designates the Director of Finance, the City's general tax assessor, as the entity responsible for collecting the charge. Balt., Md., Code art. 28 § 4-1; Balt., Md., Ordinance 13-139 § 29-5. The Director of Finance likewise collects the civil penalties imposed if an advertising host fails to pay the charge when due and determines the penalty due if an advertising host fails to file a report. Balt., Md., Ordinance §§ 29-6, 29-8.

On the other hand, the second factor suggests the charge is a fee. A charge imposed on a narrow class of taxpayers is less likely to be considered a tax than one imposed on a broader class. GenOn Mid-Atl., LLC, 650 F.3d at 1024 (quoting Bidart Bros., 73 F.3d at 931). The analysis here hinges on the number of entities the charge actually burdens, regardless of how broad the ordinance's language appears on its face. See id. For example, in GenOn Mid-Atlantic, LLC, the United States Court of Appeals for the Fourth Circuit, examining a county bill imposing a charge on large carbon dioxide emitters, considered the bill's "chief problem" to be the narrow class it burdened. Id. at 1022, 1024. Though the bill targeted a broad class of would-be taxpayers on its face – emitters exceeding 1 million tons of carbon dioxide per year – in practice, only one entity met that description and was subject to the charge. Id. at 1024. Noting that "taxes generally apply to at least more than one entity," the court ultimately concluded the bill imposed a regulatory fee, not a tax, for the purposes of the TIA. Id. at 1025–26.

The facts here compel this Court to conclude similarly. On its face, the ordinance charges any entity that owns or operates an outdoor advertising display ten feet or larger in size. Balt., Md., Ordinance 13-139 §§ 29-1(B), 29-1(D), 29-2. Any number of entities can theoretically bear that burden. In

11

practice, however, only four do, and one of them is overwhelmingly responsible. Further, because Baltimore has prohibited the construction of new displays since 2000, the burden on those four entities is unlikely to change unless they are willing to sell portions of their market share.

The third factor is inconclusive. Other than the City's assertion that the revenue will benefit the general public, it is unclear where the revenue generated from the ordinance actually goes. The recitals suggest the revenue goes toward offsetting public safety costs and lost economic revenue, but nothing before the Court shows that this is indeed the case. Cf. Hedgepeth v. Tennessee, 214 F.3d 608, 612–13 (6th Cir. 2000) (determining a state charge that allocated its revenue to benefit the general public was a tax). Considering that subject matter jurisdiction can be challenged at any time, this factor would particularly benefit from discovery. See Fed.R.Civ.P. 12(h)(3).

Because the analysis thus far leaves the determination of the charge somewhere between a tax and a fee, the purpose behind the ordinance becomes the most important factor. This factor indicates that the ordinance is a fee. The recitals openly tout twin purposes, neither of which is indicative of a tax: (1)

12

offsetting the economic burden caused by outdoor advertising displays, and (2) reducing traffic and aesthetic harms.

"Fees can serve regulatory purposes in two ways: either by discouraging particular conduct through the device of making it more costly, or by generating income ear marked to cover the cost of regulation." Hedgepeth, 215 F.3d at 612. The purposes noted by the recital appear to do both. The City levies displays to recoup the revenue lost by their presence. This is distinctly different from other purposes in which courts have found charges to be a tax, such as subsidizing other entities with compliance issues, Valero Terrestrial Corp., 205 F.3d at 133-34, and raising revenue for use in other public arenas, Hedgepeth, 215 F.3d at 613-15. The City also imposes the charge, in part, for the purposes of reducing the number of dangerous and unaesthetically pleasing signs. In doing so, it specifically attempts to "discourag[e] particular conduct through the device of making it more costly," squarely within the realm of what courts consider a fee. Id. at 612.

The City downplays the recitals and suggests instead that the ordinance was enacted as part of a broader plan to balance the budget, lower property taxes, and address other fiscal

13

concerns.[4]  But the recitals do carry some value in discerning the City Council's purpose for levying the charge.  See Turner Broadcast. Sys., Inc. v. FCC, 512 U.S. 622, 678–79 (1994) (O'Connor, J., joined by Scalia, Ginsburg, and Thomas, JJ., concurring in part and dissenting in part); Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 534–35 (1993).  And nowhere do the recitals echo the fiscal arguments the City asserts.  There is no mention of using the revenue generated by the ordinance to bolster City subsidies, balance the budget, or scale back taxes elsewhere.  Nor does the ordinance's substantive text indicate whether the revenue raised would advance any of those goals.  Instead, the recitals harp at length on traffic safety and aesthetic harms, the revenue lost to those harms, and the desire to reduce them both.  Those purposes suggest the charge is a fee.

---

[4] In making this argument, the City relies on a letter to the City Council from the Chief of the Bureau of Budget Management & Research within the Department of Finance.  (See Def.'s Mem. Supp. Mot. to Dismiss Ex. 1, at 3, ECF No. 15-2).  The Court will not consider this letter because it is neither attached to nor referenced in the Complaint.  See E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 450 (4th Cir. 2011).  Further, when defending itself against Clear Channel's First Amendment claim, the City readily asserts aesthetics and traffic safety as among its substantial interests in enacting the ordinance.  The City cannot assert its regulatory intent in one context, yet deny it here where it is less advantageous.

Consequently, the combined factors indicate that the charge is a fee, not a tax under the TIA. As a result, the Court will not dismiss this action on subject matter jurisdiction grounds.

### 2.  First Amendment Violation

Having decided that subject matter jurisdiction exists, the Court now turns to the City's contention that Clear Channel's Complaint fails to state a claim. The substance of the Complaint is founded in the First Amendment. The First Amendment, applicable to the States through the Fourteenth Amendment, protects commercial speech from unwarranted government regulation. Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561 (1980) (citing Va. Pharmacy Bd. v. Va. Citizens Consumer Council, 425 U.S. 648, 761–62 (1976)). Central Hudson outlines a four-part inquiry to determine the constitutionality of restrictions on commercial speech: (1) the expression must be protected by the First Amendment – "it at least must concern lawful activity and not be misleading"; (2) the government must have a substantial interest in restricting the speech; (3) the restriction must directly advance that asserted interest; and (4) the restriction must not be more extensive than necessary to serve that asserted interest. Id. at 566.

15

Neither party disputes that Clear Channel engages in commercially protected speech, and the City asserts it has substantial interests in aesthetics and traffic safety, which federal courts have recognized. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507–08 (1981); Clear Channel Outdoor, Inc. v. City of N.Y. (Clear Channel I), 594 F.3d 94, 103 (2d Cir. 2010) (citing Metromedia, 453 U.S. at 507–08).  Finally, Clear Channel does not contend that the ordinance is more extensive than necessary.  The focus, then, rests primarily on the third factor.

It is important to note once more that the ordinance carries twin purposes of offsetting economic burdens and reducing harms.  Clear Channel targets the ordinance's stated purpose to reduce harms, arguing the ordinance does not directly advance the City's aesthetics and traffic safety interests because (1) the City cannot prove those harms are real and (2) that imposing a charge will alleviate them to a material degree.

As to its first point, federal courts have consistently concluded that outdoor advertising displays pose "real and substantial" harms to traffic safety as a matter of law, irrespective of whether local legislatures have concrete proof. See, e.g., Metromedia, 453 U.S. at 509; Interstate Outdoor Adver., L.P. v. Zoning Bd. of the Twp. of Mount Laurel, 706 F.3d

16

527, 532-33 (3d Cir. 2013); Ackerley Comm'ns of Nw. Inc. v. Krochalis, 108 F.3d 1095, 1099-1100 (9th Cir. 1997).  They have reached similar conclusions with aesthetics.  See, e.g., Metromedia, 453 U.S. at 510.

As to its second point, Clear Channel draws a distinction between ordinances that prohibit displays and the ordinance here, which imposes a charge.  This distinction carries some weight.  Under Central Hudson's direct-advancement prong, the restriction imposed must alleviate the cited harms "to a material degree."  Greater New Orleans Broad. Ass'n, Inc. v. United States, 527 U.S. 173, 188 (1999) (quoting Edenfield v. Fane, 507 U.S. 761, 770-71 (1993)).  Prohibiting displays does just that.  See, e.g., Metromedia, 453 U.S. at 511; Clear Channel I, 594 F.3d at 106.

But prohibiting displays has a direct regulatory effect that charging them does not.[5]  There is no more direct way to

---

[5] Courts have strongly supported outright prohibitions on outdoor advertising displays enacted to advance aesthetics and traffic safety.  See, e.g., Interstate Outdoor Adver., 706 F.3d at 534; Major Media of the Se., Inc. v. City of Raleigh, 792 F.2d 1269, 1272 (4th Cir. 1986).  What is not clear from these cases is whether this strong support applies broadly to all methods in which displays can be regulated or only narrowly to prohibitions.  In Clear Channel Outdoor Inc. v. City of Los Angeles (Clear Channel II), the United States Court of Appeals for the Ninth Circuit hinted that regulations lesser than outright prohibitions may be permissible.  340 F.3d 810, 816 (9th Cir. 2003), abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) ("[T]he City could

17

regulate displays than to prohibit them, which lessens the harm or removes it altogether. See Metromedia, 453 U.S. at 508 ("[O]bviously, the most direct and perhaps the only effective approach to solving the problems [displays] create is to prohibit them."). The same cannot be said for imposing a charge. Imposing a charge alone, with no affirmative step ensuring compliance, allows a harm to remain unchanged while the City profits. It requires an additional logical link not needed in prohibition cases to justify to what degree, if any, the charge materially alleviates the aesthetic and traffic safety harms cited by the City, particularly when the City already has extensive yet wholly separate zoning laws regulating the construction and aesthetics of outdoor advertising displays. At this stage, the Court is loath to dismiss Clear Channel's

---

constitutionally pass an ordinance banning all commercial off-site signs. It makes little sense, then, to argue that adopting a program that merely subjects those signs to inspection would be unconstitutional."). But that analysis only concerned whether the ordinance, which subjected offsite displays to annual inspections and fees, was underinclusive in targeting offsite signs. Id. at 812, 815. Not only have courts upheld the onsite/offsite distinction on many occasions, see, e.g., Metrodmedia, 453 U.S. at 511-12; Clear Channel I, 594 F.3d at 106, but the inspections also ensured compliance with a set of regulations in a way that imposing a charge alone does not. Moreover, the fees imposed in Clear Channel II were used to pay for the inspections, not to encourage compliance in their own right. Clear Channel II, 340 F.3d at 812.

Complaint on this point. As a result, the City's Motion to Dismiss will be denied.[6]

### 3. Leave to File a Surreply

Clear Channel also moves for leave to file a surreply to address subject matter jurisdiction. The Court may permit surreplies "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013) (quoting Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003)) (internal quotation marks omitted). But a surreply is inappropriate "[w]here the arguments made by [the defendants] in their reply brief are merely responses to new arguments made by [the plaintiffs] in their response." Id. (quoting Aguilar v. LR Coin Laudromat, Inc., 2012 WL 1569552, at *2-3 (D.Md. May 2, 2012)) (internal quotation marks omitted). Though the City makes new subject matter jurisdiction arguments in its reply, the arguments respond directly to those Clear Channel makes in its response. The City raises no novel issue prompting the Court to permit a surreply, and thus Clear Channel's Motion will be denied.

---

[6] Because the Court is declining to dismiss on this ground, it need not address the parties' remaining arguments.

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, deny the City's Motion to Dismiss (ECF No. 15) and Clear Channel's Motion for Leave to File Surreply (ECF No. 18).

Entered this 19th day of May, 2014

/s/
_____
George L. Russell, III
United States District Judge