```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

CLEAR CHANNEL OUTDOOR, INC.,    :

     Plaintiff,                 :

v.                              :
                                    Civil Action No. GLR-13-2379
MAYOR AND CITY COUNCIL OF       :
BALTIMORE,
                                :
     Defendant.
                                :
```

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff's, Clear Channel Outdoor, Inc. ("Clear Channel"), Motion for Summary Judgment and Defendant's, Mayor and City Council of Baltimore (the "City"), Cross-Motion for Summary Judgment. (ECF Nos. 37, 38). Principally at issue is whether Baltimore City Ordinance 13-139 (the "Billboard Ordinance"), which levies select outdoor advertising displays in the city, constitutes a tax under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (2012).

The Court, having reviewed the Motions and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Court will deny Clear Channel's Motion for Summary Judgment and grant the City's Cross-Motion for Summary Judgment.

**I.   BACKGROUND**[1]

The Billboard Ordinance became law in June 2013.  See Balt., Md., Ordinance 13-139 (Jun. 17, 2013) (codified as amended at Balt., Md., Code art. 28, §§ 29 et seq. (2014)).  The Baltimore City Council enacted it for "the purpose of imposing a tax on the privilege of exhibiting outdoor advertising displays in the City."  Id. at 1:2-3.  Clear Channel owns and operates approximately ninety-five percent of the advertising displays subject to the Billboard Ordinance.  It alleges the Billboard Ordinance will cost it $1.5 million annually.

On August 14, 2013, Clear Channel filed a Complaint alleging the Billboard Ordinance impermissibly regulates commercial speech in violation of the First and Fourteenth Amendments to the United States Constitution.  (ECF No. 1).  Clear Channel seeks a declaratory judgment that the Billboard Ordinance is unconstitutional and an order enjoining the City from enforcing it.  The City moved to dismiss the action on September 19, 2013, arguing this Court did not have subject-matter jurisdiction because the Billboard Ordinance is a "tax" under the TIA.  (ECF No. 15).  The Court denied the City's Motion to Dismiss on May 19, 2014, explaining that "at least at th[at] stage of the litigation, the ordinance [was] a fee, not a

---

[1] Unless otherwise noted, the following facts are taken from the parties' briefings on the instant motions, and are viewed in the light most favorable to the nonmoving party.

tax, for the purposes of the TIA." (Mem. Op. at 2, ECF No. 21). The City filed a Motion for Reconsideration (ECF No. 23), which the Court denied on August 19, 2014 (ECF No. 26).

Clear Channel filed a Motion for Summary Judgment on April 3, 2015. (ECF No. 37). The City responded by filing an Opposition to the Motion for Summary Judgment and Cross-Motion for Summary Judgment on April 20, 2015. (ECF No. 38). Clear Channel then submitted an Opposition to the City's Motion for Summary Judgment and Reply supporting its Motion for Summary Judgment on May 7, 2015. (ECF No. 39). Finally, the City submitted a Reply to Clear Channel's Opposition on May 26, 2015. (ECF No. 40).

## II.  DISCUSSION

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a

genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249

4

F.3d at 265.  A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'"  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion."  Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).  This Court, however, must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  Anderson, 477 U.S. at 249-50.

**B.   Analysis**

The Court will deny Clear Channel's Motion for Summary Judgment and grant the City's Cross-Motion for Summary Judgment because the Billboard Ordinance is a "tax" under the TIA.

"The TIA 'is a jurisdictional bar not subject to waiver.'" Brittingham 62, LLC v. Somerset Cty. Sanitary Dist., Inc., No. GLR 12-3104, 2013 WL 398098, at *3 (D.Md. Jan. 31, 2013) (quoting Antosh v. City of Coll. Park, 341 F.Supp.2d 565, 568 (D.Md. 2004)).  It provides that federal courts lack subject-matter jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  It "applies to actions where, as here, a taxpayer seeks injunctive or declaratory relief under § 1983."  Folio v. City of Clarksburg, W.Va., 134 F.3d 1211, 1214 (4th Cir. 1998).

When considering whether the TIA bars a federal challenge to a charge imposed by a state or local government, a district court must resolve two issues: (1) whether a plain, speedy, and efficient remedy exists in state court; and (2) whether the charge is a tax or a fee.  Collins Holding Corp. v. Jasper Cty., S.C., 123 F.3d 797, 799 (4th Cir. 1997).  Clear Channel does not argue that Maryland state courts do not provide a speedy and

efficient remedy. Thus, the sole issue before the Court is whether the Billboard Ordinance is a tax or a fee under the TIA.

"The nebulous line between tax and fee is determined by federal law." Brittingham, 2013 WL 398098, at *3 (citing Folio, 134 F.3d at 1217). As a general matter, when evaluating whether a particular charge is a tax or a fee, a court should assess "whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'" Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000). All charges fall on a spectrum with a "classic tax" on one end and a "classic fee" on the other. San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R., 967 F.2d 683, 685 (1st Cir. 1992). "The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large." Valero, 205 F.3d at 134 (citing San Juan Cellular, 967 F.2d at 685). "The 'classic fee' is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise 'money placed in a special fund to defray the agency's regulation-related expenses.'" Id. (quoting San Juan Cellular, 967 F.2d at 685).

To aid a court's assessment of where a charge falls on the spectrum, the United States Court of Appeals for the Fourth Circuit has developed a three-prong inquiry: "(1) what entity

7

imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." Id. (emphasis added). This inquiry often yields an ambiguous result, as the characteristics of a charge will often place it somewhere between a classic fee and a classic tax. Id.

The result of the three-prong inquiry is ambiguous when, for example, a legislature imposes the charge, indicating the charge is a tax, but the charge applies to only a narrow segment of the population, supporting a finding that the charge is a fee. See Club Ass'n of W. Va., Inc. v. Wise, 156 F.Supp.2d 599, 613-14 (S.D.W.Va. 2001), aff'd sub nom., Club Ass'n. v. Wise, 293 F.3d 723 (4th Cir. 2002).

When the result of the three-prong inquiry is ambiguous, the third prong becomes the most important. See DIRECTV, Inc. v. Tolson, 513 F.3d 119, 125 (4th Cir. 2008); Club Ass'n, 156 F.Supp.2d at 614.

### 1. The First Prong Indicates the Billboard Ordinance is a Tax.

The first prong indicates a charge is a tax when it is imposed by a legislature, rather than an administrative agency, and the responsibility for collecting the charge lies with the general tax assessor. See Valero, 205 F.3d at 134; Collins, 123 F.3d at 800. There is no dispute that the Baltimore City

Council enacted the Billboard Ordinance and the City's general tax assessor, the Director of Finance, is responsible for collecting the charge.  Balt., Md., Code art. 28, § 4-1; Balt., Md., Ordinance 13-139 § 29-5.  Thus, the Court finds the first prong indicates the Billboard Ordinance is a tax.

### 2. The Second Prong Indicates the Billboard Ordinance is a Fee.

The second prong indicates a charge is a fee when it is imposed upon a narrow segment of the population.  See GenOn Mid-Atl., LLC v. Montgomery Cty., Md., 650 F.3d 1021, 1024 (4th Cir. 2011) (quoting Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996)); see also Antosh v. City of Coll. Park, 341 F.Supp.2d 565, 568 (D.Md. 2004).

There is no dispute that the Billboard Ordinance affects only a narrow segment of the population and Clear Channel is primarily responsible for bearing the financial burden. Including Clear Channel, there are only four entities that own or operate the outdoor advertising displays subject to the Billboard Ordinance.  (See Pl.'s Mot. Summ. J. Ex. 10 at 6, ECF No. 37-11).  And, what is more, out of the approximately 830 advertising displays subject to the Billboard Ordinance, Clear Channel owns or operates approximately 800.  (Id. Ex. 6 at ¶ 6, ECF No. 37-7).  Consequently, Clear Channel is responsible for the vast majority of the Billboard Ordinance's financial burden,

9

paying $1.5 million annually, while the other entities pay a comparatively meager $100,000. (See id. Ex. 6 at ¶ 6); (id. Ex. 10 at 6).

The City cites several cases outside the Fourth Circuit for the proposition that a charge can be a tax under the TIA even when it affects only a narrow segment of the population. See, e.g., Entergy Nuclear Vt. Yankee, LLC v. Shumlin, 737 F.3d 228, 233 (2d Cir. 2013) ("Many revenue measures that are indisputably taxes, however, fall on a limited portion of the population."); Bidart Bros., 73 F.3d at 931-32 ("[A]n assessment upon a narrow class of parties can still be characterized as a tax under the TIA."). The Court, however, finds GenOn—a Fourth Circuit case—to be more instructive.

In GenOn, the Fourth Circuit considered whether a charge imposed by a county bill directed at large carbon dioxide emitters was a tax or a fee under the TIA. The court observed that the "chief problem" with the charge was that the burden fell on GenOn alone. GenOn, 650 F.3d at 1024. Though the bill, on its face, targeted a broad class of would-be taxpayers, in practice, only one entity met that description and was subject to the charge. Id. Noting that "taxes generally apply to at least more than one entity" and "[t]he County Council . . . was thus well aware that the incidence of the charge would fall

entirely on GenOn," the court held that the charge was a fee under the TIA. Id. at 1024-26.

Here, to be sure, there are a few entities other than Clear Channel that own or operate advertising displays subject to the Billboard Ordinance. Clear Channel, however, is primarily responsible for the Billboard Ordinance's financial burden. Indeed, the other entities' $100,000 annual responsibility appears almost de minimis when compared to Clear Channel's $1.5 million. Moreover, the Baltimore City Council was well aware that the Billboard Ordinance would primarily burden Clear Channel. (See Pl.'s Mot. Summ. J Ex. 21 at 2, ECF No. 37-22); (id. Ex. 18 at 2, ECF No. 37-19).

The City also argues the second prong indicates the Billboard Ordinance is a tax because it uses general, open-ended criteria to define the population subject to it. This argument fails for at least two reasons. First, the Billboard Ordinance significantly circumscribes the population subject to it by excluding "onsite" displays[2] and those displays smaller than ten square feet. Balt., Md., Code art. 28, § 29-1(d). Second, even assuming the Billboard Ordinance uses general, open-ended criteria, that is not a material fact. Who the charge actually

---

[2] "Onsite displays" are displays that promote a business, commodity, service, event, or other activity conducted on the premises upon which the display appears. See Balt., Md., Code art. 28 § 29-1(d).

11

affects is material. See GenOn, 650 F.3d at 1024 ("The fact that this charge affects the narrowest possible class is compelling evidence that it is a punitive fee rather than a tax." (emphasis added)). And, here, it is undisputed that the Billboard Ordinance primarily affects Clear Channel.

The Court, therefore, finds the second prong indicates the Billboard Ordinance is a fee.

### 3. The Third Prong Indicates the Billboard Ordinance is a Tax.

The third prong indicates a charge is a tax when the revenue is paid into a general fund. Collins, 123 F.3d at 800-01. More important than where the revenue is placed, however, is how the revenue is used. See id. at 801 (quoting Hager v. City of W. Peoria, 84 F.3d 865, 870-71 (7th Cir.1996)); Valero, 205 F.3d at 135 (explaining that a court must examine the use and purpose of a charge as opposed to performing a cursory review of where the revenue is placed).

When the revenue is used to benefit the general public, the charge is a tax. Valero, 205 F.3d at 134; see Club Ass'n., 293 F.3d at 726. Conversely, when the revenue is used to provide benefits that are "more narrowly circumscribed," the charge is a fee. Valero, 205 F.3d at 134.

Benefits are "more narrowly circumscribed" when the revenue is used to benefit only the regulated entities or to defray

12

regulation costs.  Collins, 123 F.3d at 800-01; see State of S.C. ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir. 1983); San Juan Cellular, 967 F.2d at 686.

There is no dispute that the City credits the revenue generated by the Billboard Ordinance to the City's "General Fund."  (See Def.'s Mot. Summ. J. Ex. 11 at 2, ECF No. 38-13); (id. Ex. 9 at 7, ECF No. 38-11).  It is also undisputed, however, that in November 2013, the Baltimore City Council enacted Ordinance 13-185 (the "Art and Culture Ordinance"), a "Supplemental General Fund Operating Appropriation" that allocated $250,000 of the Billboard Ordinance's revenue for "Art and Culture."  (Def.'s Mot. Summ. J Ex. 14 ["Art and Culture Ordinance"] at 1, ECF No. 38-16).[3]  The Art and Culture Ordinance established the Creative Baltimore Fund (the "Fund") within the Baltimore Office of Promotion and the Arts.  (Id. at 2).  The Fund was intended to provide small grants to non-profit organizations for "cultural community-based programming." (Pl.'s Mot. Summ. J. Ex. 29 at 1, ECF No. 37-30).

Clear Channel asserts that the Art and Culture Ordinance demonstrates that the Billboard Ordinance is a fee because it shows that the City always intended to use the Billboard

---

[3] Specifically, the $250,000 allocated by the Art and Culture Ordinance represented "funds from billboard tax revenue in excess of the revenue relied on by the Board of Estimates in determining the tax levy required to balance the budget for Fiscal Year 2014."  (Art and Culture Ordinance at 1).

13

Ordinance's revenue for a specific purpose: supporting arts and culture programs. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. at 12, ECF No. 39). Clear Channel attempts to bolsters this argument by pointing to an April 25, 2013 hearing before the City's Taxation, Finance and Economic Development Committee at which Andrew Kleine, Chief of the City's Bureau of Budget and Management Research, remarked that "$1.0 million from the [Billboard Ordinance's] proceeds have been included in the budget for arts and culture." (Pl.'s Mot. Summ. J. Ex. 21 at 2, ECF No. 37-22).

Clear Channel's argument is unavailing. The undisputed evidence that some of the Billboard Ordinance's revenue is dedicated to funding arts and cultural programming demonstrates that the benefits of the Billboard Ordinance are not narrowly circumscribed to regulated entities. To the contrary, the benefits reach the general public and all those who perform and enjoy the arts and cultural programming supported by the Fund. Indeed, the Fund has used Billboard Ordinance revenue to support programming at public schools, theaters, and museums—all institutions open to the general public.[4] (See Def.'s Mot. Summ. J. Ex. 30 at 1, ECF No. 37-31).

---

[4] The Art and Culture Ordinance allocated only a portion of the Billboard Ordinance revenue generated in 2014. Clear Channel presents no other spending ordinance's showing that the City uses the remainder of the Billboard Ordinance revenue to

14

Moreover, Clear Channel presents no evidence that the City uses any portion of the Billboard Ordinance's revenue to provide narrow benefits to entities owning or operating billboards in Baltimore City or to defray the costs of regulating outdoor advertising.  See Hedgepeth v. Tennessee, 215 F.3d 608, 613–15 (6th Cir. 2000) (holding that state assessment on disabled parking placards was a tax under the TIA because "[t]here [was] simply no evidence to support Plaintiffs' contention that the funds collected from the placards are paid into a special fund to benefit the regulated entities or to defray the cost of regulation").

Clear Channel further argues the third prong indicates the Billboard Ordinance is a fee because the recitals demonstrate that it has a regulatory purpose.  There are two regulatory purposes that may indicate a charge is a fee: (1) "generating income ear marked to cover the cost of regulation;" or (2) discouraging particular conduct by making it more expensive.  Hedgepeth, 215 F.3d at 612.  When a charge has one of these regulatory purposes and the revenue is used to advance the regulatory agenda, it is a fee.  For example, in GenOn, Montgomery County, Maryland imposed a "carbon charge" to

---

fund arts and culture.  Even assuming the City uses all the Billboard Ordinance revenue to fund arts and culture, however, the benefits of this use are not limited to outdoor advertisers subject to the Billboard Ordinance.

15

discourage greenhouse gas emissions. 650 F.3d at 1022. The Fourth Circuit held that the carbon charge was a fee because fifty percent of the revenue was earmarked for funding greenhouse gas reduction programs. See id. at 1025-26. Indeed, the revenue was an "integral part of the County's greenhouse gas regulatory agenda." Id. at 1025.

Conversely, when a charge has one of these regulatory purposes and the revenue is not used to advance the regulatory agenda, but rather to benefit the general public, it is a tax. For instance, in Club Association, the West Virginia legislature enacted the West Virginia Limited Video Lottery Act, which made it more expensive to operate, manufacture, service, or sell video lottery equipment by imposing licensing fees. 293 F.3d at 725. One of the avowed purposes of the Act was to "stem the proliferation of gambling in the State." Id. at 724. West Virginia used the revenue, however, to fund "programs that would benefit the State's populace as a whole," such as state park improvement. Id. at 726; Club Ass'n, 156 F.Supp.2d at 614. The Fourth Circuit held that the licensing fees were a tax. Club Ass'n, 293 F.3d at 726.

The Billboard Ordinance recitals declare that outdoor advertising "reduces the City's ability to collect revenue from other sources" and the Billboard Ordinance "properly allocat[es] the potential economic burdens caused by outdoor advertising."

16

Balt., Md., Ordinance 13-139 at 2:5–8.  At first blush, these statements suggest that the City intended to use the Billboard Ordinance to generate revenue to cover the cost of regulating outdoor advertising.  Clear Channel presents no evidence, however, that the City actually earmarks Billboard Ordinance revenue to cover the cost of any such regulation.  Quite to the contrary, it is undisputed that the City has used Billboard Ordinance revenue to fund arts and culture—a purpose wholly unrelated to regulating billboards.

The Billboard Ordinance recitals also declare that "outdoor advertising endangers public safety by distracting the attention of drivers from the roadway."  Id. at 2:1–2.  This statement suggests that the City intended to discourage outdoor advertising by making it more expensive.  But the City does not use Billboard Ordinance revenue to advance this regulatory agenda—there is no evidence it uses Billboard Ordinance revenue to further discourage roadway distractions or improve driver safety.  Instead, like in Club Association, the City uses Billboard Ordinance revenue to benefit the general public by funding programming at public schools, theaters, and museums that are open to the general public.

For these reasons, the Court finds the third prong indicates the Billboard Ordinance is a tax.

In sum, the first prong indicates the Billboard Ordinance is a tax because the Baltimore City Council enacted it and the Department of Finance, the City's general tax assessor, collects the revenue.  The second prong, however, indicates the Billboard Ordinance is a fee because Clear Channel is primarily affected.  Because the first two prongs place the Billboard Ordinance somewhere between a fee and tax,[5] the third prong becomes most important.  See Club Ass'n, 156 F.Supp.2d at 613-14.  The third prong strongly indicates the Billboard Ordinance is a tax because the City does not use Billboard Ordinance revenue to advance its regulatory agenda, defray regulation costs, or provide a narrow benefit to regulated entities.  Thus, the Billboard Ordinance is a tax.  Accordingly, the Court lacks subject-matter jurisdiction to resolve the merits of the constitutional challenge.

## CONCLUSION

Based on the foregoing reasons, Clear Channel's Motion for Summary Judgment (ECF No. 37) will be DENIED and the City's

---

[5] In GenOn, the Fourth Circuit's analysis of the first two prongs was conclusive—the charge was clearly a fee because although the charge was imposed by a legislature, indicating a tax, the charge affected only one entity, overwhelming indicating a fee.  See 650 F.3d at 1024.  The same cannot be said, however, for this case.  As the Court explained above, although Clear Channel is primarily affected by the Billboard Ordinance, it is not solely affected.  Thus, unlike in GenOn, the Court's analysis of the first two prongs is inconclusive.

Cross-Motion for Summary Judgment (ECF No. 38) will be GRANTED.

A separate Order follows.

Entered this 28th day of December, 2015

                              Very truly yours,

                                    /s/
                      _____
                      George L. Russell, III
                      United States District Judge